EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN PARÍS MEDINA, acusado y apelante.

Número: CR-72-83     Resuelto: 13 de marzo de 1973

*Santos P. Amadeo* y *Manuel García Marrero,* abogados del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Adolfo J. Vila, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El apelante fue convicto de poseer, transportar y vender heroína. Se le sentenció a cumplir concurrentemente de seis a doce años de presidio en cada cargo.

Un agente encubierto acompañado de un confidente llegó a la plaza de Canóvanas el 11 de noviembre de 1970 cuando observó que el apelante entraba a un bar situado frente a la plaza. El acusado entró primero al bar, luego salió e inquirió del agente encubierto qué hacía por allí. El agente le contestó que buscaba a una persona llamada Paco para "capiarle". El acusado le ofreció material. Se pusieron de acuerdo en el precio y le vendió tres *decks*.

La defensa presentó varios testigos para establecer una coartada y la buena reputación del apelante.

Pasamos a considerar las tres cuestiones que plantea el apelante.

■ I. Sostiene que "erró el juez sentenciador al instruir al jurado que deberían encontrar culpable o inocente al acusado de los tres cargos que se le imputaban en la acusación."

La forma como ocurrió la transacción que dio margen a la radicación de la acusación imputándole tres cargos—transportación, posesión y venta de heroína—justifican la instrucción impugnada. Para el acusado poder "venderla" tuvo que "transportarla" y como consecuencia "poseer" la droga antes de venderla. La prueba no justificaba absolverlo en uno o dos y condenarlo en los restantes cargos.

II. La falta de unanimidad del veredicto—10 a 2—apuntado como error, ha sido reiteradamente resuelta en contra de la contención del apelante.

III. Al instruir al jurado el juez que presidió el juicio manifestó "Todo testigo se presume que dice la verdad. . . ." (¹)

---

(¹) La instrucción completa sobre este aspecto fue como sigue:

"Todo testigo se presume que dice la verdad. La presunción puede ser contrarrestada o descartada por la forma de declarar, el carácter del testimonio o por otra evidencia que afecte la veracidad, honradez e integridad o los motivos del declarante. Por otro lado si un testigo hubiere faltado a la verdad en una parte esencial de su declaración, entonces es la obliga-

El apelante sostiene que esa instrucción "está en conflicto con la presunción de inocencia cuando el acusado no declara."

En Puerto Rico, la base para la instrucción impugnada la encontramos en las disposiciones contenidas en el Art. 21 de la Ley de Evidencia, correspondiente al Art. 383 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1664. Establece dicho artículo que "Se presume que todo testigo dice la verdad. Esta presunción, sin embargo, puede ser rechazada, por la forma en que declare, por el carácter de su declaración, o por evidencia que afecte su veracidad, honradez, integridad o móviles, o por evidencia contradictoria." Este artículo nos viene de California. Correspondía al Art. 1847 del Código de Enjuiciamiento Civil de aquel Estado, pero fue derogado en el año 1965, ver Calif. Stat's 1965, ch. 299, sec. 44, pág. 1360 y sustituido por la Sec. 780 del Código de Evidencia. (²)

---

ción de ustedes poner en entredicho, en tela de juicio el resto de la declaración del testigo. Puede tacharse la veracidad de un testigo entre otras cosas, por la forma de declarar y también por evidencia de manifestaciones contradictorias. Si hubiere habido prueba, si ustedes consideran que la defensa ofreció prueba tendente a demostrar que algún testigo del Fiscal se contradijo en relación con las manifestaciones que hizo en corte abierta y cualquiera otra declaración que hubiera prestado anteriormente, entonces eso deben considerarlo ustedes a los efectos de dar crédito a un testigo. Ahora, esas contradicciones deben ser sustanciales y no contradicciones más bien aparentes que reales. Una vez considerados por ustedes toda la prueba y el crédito que les merezca la misma, entonces deben determinar si todas las circunstancias probadas tienden a establecer la culpabilidad del acusado fuera de toda duda razonable. Ahora por otro lado, todo acusado se presume que es inocente hasta que se le prueba fuera de toda duda razonable su culpabilidad. Esa presunción de inocencia que acompaña al acusado débe haberle acompañado a través de todo el proceso e igualmente le acompañará y debe acompañarle mientras ustedes estén deliberando. . . ."

A la pág. 308, el juez expresa:

"Se hace constar en el récord que ni la defensa ni el Fiscal tienen objeción a las instrucciones dadas."

(²) Dispone así la sec. 780:

"Excepto cuando estatutariamente se provee lo contrario, el tribunal ó el jurado, al determinar sobre la credibilidad de un testigo, puede considerar cualquier materia que razonablemente tienda a probar la veracidad o falsedad de su testimonio en una vista, incluyendo, pero no limitándose a,

█ El propósito de las instrucciones, además de explicarle al jurado cuál es la ley en lo que se refiere al delito que se imputa, es informarle qué reglas deben seguir en su función de adjudicar los hechos. Teniendo esto presente, las instrucciones deben ser precisas, claras y ajustarse a derecho. Una instrucción que le informe que se presume que todo testigo dice la verdad—cuando el acusado no ha controvertido la prueba de cargo por no haber presentado testigos—puede tener el efecto de que el jurado entienda que debe darle crédito a la prueba del Estado. Evidentemente por esa razón en California se derogó el estatuto que sirvió de modelo al nuestro y se aprobó el que se transcribe en el escolio 2 donde se enumeran las normas que debe tener presente el jurado al aquilatar las declaraciones de los testigos. (³)

Al planteársenos por primera vez la cuestión que aquí consideramos, en *Pueblo* v. *Martínez Guerra*, 98 D.P.R. 682

---

cualquiera de los siguientes puntos:

(a) Su comportamiento al testificar y la manera en que lo hace.

(b) El carácter de su testimonio.

(c) El alcance de su capacidad para percibir, recordar y comunicar cualquier materia sobre la cual testifica.

(d) El ámbito de la oportunidad con que contó para percibir cualquier materia sobre la cual testifica.

(e) Su condición en relación a la honestidad y veracidad, o sus antónimos.

(f) La existencia de un prejuicio, interés u otro móvil.

(g) La existencia de una declaración propia anterior que resulte consistente con su testimonio en la vista.

(h) La existencia de una declaración propia anterior que resulte inconsistente con cualquier parte de su testimonio en la vista.

(i) La ocurrencia o falta de ella de cualquier hecho sobre el cual presta testimonio.

(j) Su actitud hacia la acción ventilándose o hacia el prestar testimonio.

(k) Su admisión de falta de veracidad."

(³) Teniendo este Tribunal la facultad de promulgar Reglas de Evidencia, Art. V, Sec. 6, Constitución de Puerto Rico, en el cuerpo de Reglas que se adoptarán en virtud de este mandato constitucional, se establecerán las normas que deben tenerse presente, al aquilatar las declaraciones de los testigos.

(1970) expresamos en el escolio 2 a la pág. 685 que existe una marcada tendencia en los tribunales federales a abandonar esta instrucción y citamos *United States* v. *Safley,* 408 F.2d 603 (4th Cir. 1969); *United States* v. *Boone,* 401 F.2d 659 (3d. Cir. 1968) y *Marsh* v. *United States,* 402 F.2d 457 (9th Cir. 1968).

Existe un consenso en la jurisdicción federal, al efecto de que una instrucción como la aquí impugnada es errónea y perjudica al acusado. Pero se hace claro que cuando no se objeta —privando de esa forma al juez de corregir el error—o cuando el acusado presenta prueba, la situación varía y el impartirla no se considera error fatal que conlleve la revocación de la sentencia. *Smith* v. *Cupp,* 457 F.2d 1098–1100 (9th Cir. 1972); *United States* v. *Birmingham,* 447 F.2d 1313–1315 (10th Cir. 1971); *United States* v. *Stroble,* 431 F.2d 1273–1278 (6th Cir. 1970); *United States* v. *Safley,* supra; *United States* v. *Boone,* supra; *Marsh* v. *United States,* supra; *United States* v. *Evans,* 398 F.2d 159 (3d. Cir. 1968); *United States* v. *Meisch,* 370 F.2d 768 (3d Cir. 1966); *United States* v. *Johnson,* 371 F.2d 800 (3d Cir. 1967); *McMillen* v. *United States,* 386 F.2d 29 (1st Cir. 1967); Anotación: *Instruction-Witness' Credibility,* 8 A.L.R. Fed. 319 (1971); *United States* v. *Dichiarinte,* 385 F.2d 333, 339 (7th Cir. 1967) *cert. den.* 390 U.S. 945; *United States* v. *Bilotti,* 380 F.2d 649, 654, 656 (2d Cir. 1967) *cert. den.* 389 U.S. 944.

En los dictámenes antes citados se expone el criterio de que una instrucción a los efectos de que se presume que un testigo dice la verdad resulta perjudicial en un caso criminal por el posible conflicto que pueda haber entre dicha presunción y la más fundamental presunción de inocencia, que tiene rango constitucional. Asimismo sostienen que cuando en un caso criminal sólo desfila la prueba presentada por el fiscal y las instrucciones al jurado afirman que se presume que los testigos declaran la verdad, el acusado está expuesto al peligro

de que el jurado se sienta obligado a aceptar literalmente el testimonio no impugnado de los testigos de cargo. Afirman que transmitir dicha instrucción constituiría un error que justificaría la revocación de la sentencia. Pero cuando este efecto unilateral de la presunción no está presente por haber declarado testigos a favor del acusado, tal instrucción no justifica una revocación ya que el testimonio de estos testigos de la defensa está, desde luego, igualmente sujeto a la presunción de que dicen la verdad, contenida en las instrucciones. Además, el peligro de que el jurado se sienta obligado a aceptar literalmente el testimonio no impugnado de los testigos del Gobierno para superar la presunción de inocencia no existe, porque el testimonio de esos testigos es impugnado directamente por los testigos de la defensa. Asi, la conclusión final del jurado solamente puede estar basada en su propia evaluación de la relativa credibilidad tanto de los testigos de cargo como de los testigos de la defensa. Por lo tanto, la instrucción relativa a la presunción de que un testigo está diciendo la verdad no puede restar méritos al derecho exclusivo del jurado de determinar la credibilidad de los testigos. Pero cuando solamente han declarado los testigos de cargo, la presunción de que se está diciendo la verdad puede ser equivalente a una asunción de culpabilidad en la mente del jurado, y confligir así con la presunción de inocencia de un acusado. Cuando ambas partes han presentado testigos, ninguna está favorecida por la presunción a que hace referencia la instrucción.

En Oregón donde existe un estatuto similar al nuestro— ORS 44370—se llegó a esta misma conclusión por haber presentado prueba el acusado. *State* v. *Smith*, 458 P.2d 687 (Or. 1969). Y en California, donde como hemos dejado consignado se derogó el estatuto que establecía la presunción, se resolvió en un caso en que el juicio se celebró después de la derogación, que el transmitir la instrucción no constituía un error que conllevara la revocación de la sentencia, ya que el acusado

había presentado prueba y no la había objetado. *People* v. *Hardy*, 76 Cal. Rpt. 557 (Cal. C.A. 1st. Dist. 1969).

En el presente caso declararon varios testigos por la defensa y el acusado no objetó la instrucción que ahora impugna, por lo que no procede revocar la sentencia apelada.

■ Es conveniente consignar que los jueces de instancia a partir del 1ro. de mayo de 1973 en vista de lo que hoy resolvemos al efecto de que la instrucción puede resultar perjudicial al acusado, deben eliminarla de las instrucciones que imparten, a los jurados independientemente de que se presente o no prueba por la defensa. Ver *United States* v. *Gray*, 464 P.2d 632–635 (8th Cir. 1972). Ver además, 1 *Devitt & Blackmar Fed. Jury Instr*. Sec. 12.01, pág. 253, ed. 1970).

*No habiéndose cometido ninguno de los errores apuntados, procede confirmar la sentencia apelada.*