EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* VÍCTOR BÁEZ CINTRÓN c/p NEGRO y MIGUEL LOZADA FERNÁNDEZ c/p MIGUEL, acusados y apelantes.

*Número*: CR-73-36          *Resuelto*: 25 de febrero de 1974

*Santos P. Amadeo* y *Jorge Santiago* abogados de los acusados; *Myriam Naveira de Rodón, Procuradora General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Los apelantes planearon con acuciador detalle el asalto para robar en una estación de gasolina que realizaron la noche del 19 de diciembre de 1969, y cuando el empleado resistió y dio voces, uno de ellos le enterró un cuchillo en el vientre produciéndole heridas que le causaron la muerte en breve plazo. Fueron juzgados ante jurado por asesinato en primer grado resultando ambos convictos en dicho cargo "por mayoría

de 9 ó más" y el co-acusado Báez lo fue además por infracción del Art. 4 de la Ley de Armas, y sentenciados el 26 de marzo de 1971 ambos reos a cadena perpetua, y Báez adicionalmente a un año de cárcel.

En su recurso de apelación señalan como errores: (1) inconstitucionalidad del veredicto por mayoría; (2) inclusión en las instrucciones al jurado de la fuga de los apelantes como elemento a considerar en la prueba; (3) ausencia de instrucción al jurado sobre su poder para absolver aun cuando la prueba sostenga la culpabilidad de los acusados; (4) instrucción en cuanto a la presunción de veracidad en la declaración de todo testigo; (5) falta de instrucción en cuanto al carácter de cómplice de un testigo y la necesidad de corroborar su testimonio; (6) falta de incluir en las instrucciones una advertencia sobre cautela y especial análisis del testimonio del alegado cómplice; y (7) insuficiencia de la prueba para establecer la culpabilidad más allá de duda razonable.

■ (1) Enfrentándose a la cuestión de si la garantía constitucional de un juicio por jurado (ampliada en *Duncan* v. *Louisiana*, 391 U.S. 145; *Baldwin* v. *New York*, 399 U.S. 66; y *DeStefano* v. *Woods*, 392 U.S. 631), necesariamente requiere ser juzgado por exactamente 12 personas, ni más ni menos, en el caso de *Williams* v. *Florida*, (1970) 399 U.S. 78, donde el jurado que conoció de una acusación por robo estuvo compuesto de sólo 6 individuos, resolvió el Tribunal Supremo de los Estados Unidos: "Sostenemos que un panel de 12 no es ingrediente necesario del 'juicio por jurado', y que la negativa del Estado a escoger más de los 6 jurados provistos por la ley de Florida no vulneró los derechos del acusado bajo la Enmienda VI según extendidos a los Estados bajo la XIV."

■ Con gran sensatez se resuelve en *Williams*, supra, que la función primordial del jurado es deliberativa y que su confiabilidad para determinar hechos no depende de su tamaño, por lo que la decisión deja en manos del Congreso y de las

Legislaturas estatales, sin restricción por la Enmienda VI, la integración cuantitativa del jurado.

La Constitución del Estado Libre Asociado de Puerto Rico en su Art. II, Sec. 11 ordena:

"En los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por 12 vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de 9."

En términos de raciocinio y de función deliberativa [1] de grupo, cumple mejor la clásica encomienda de juicio por sus pares un jurado cuyo veredicto ha de estar sostenido por no menos de 9 que el de 6 validado por la decisión de *Williams*, supra. Si se tribuye el origen del jurado al propósito de crear un cuerpo protector del acusado frente a posibles abusos de funcionarios judiciales y ejecutivos que intervienen en el proceso judicial, la Regla de veredicto por mayoría propicia aquella intención original en cuanto permite absoluciones por 9, 10 u 11 votos, [2] posibilidad totalmente excluida por la unanimidad que jamás fue escrita en la Constitución americana y que con tanta insistencia preconizan los apelantes. Y si por el contrario fuese adverso al acusado el veredicto de mayoría, no puede atribuirse calidad de razonable a la duda que falló en mover la conciencia y el intelecto de 9, 10 u 11 jurados de un grupo de 12. De modo que el veredicto por mayoría cumple y satisface a cabalidad el sentido básico de justicia, juego limpio y debido proceso que satura nuestro método de enjuiciamiento.

---

[1] *Thompson* v. *Utah*, 170 U.S. 343 (1899), que el apelante cita como autoridad exigente de veredicto unánime aparte de regular una circunstancia *ex post facto* no presente aquí que obligó a recurrir a nociones del derecho común en vez de la Constitución, ha sido descartado por tener más de mística que ·de doctrina jurídica, saturado del trasfondo supersticioso del número 12 por ser 12 los apóstoles, 12 las tablas de la ley, 12 las tribus de Israel, etc., *Williams* v. *Florida*, citado, a la pág. 89.

[2] Se brinda así la "mayor y más eficaz protección a los derechos del acusado", eje central del argumento de los apelantes, sin afectar el debido proceso de ley ni alterar el principio de duda razonable. *Johnson* v. *Louisiana*, (1972) 406 U.S. 356; *Apodaca* v. *Oregon*, (1972) 406 U.S. 404.

Se dirá que *Williams,* supra, dejó la cuestión de veredicto unánime para ser resuelta más tarde. Sin embargo, en Puerto Rico se ha venido resolviendo consistentemente que no hay necesidad de importar un método ·de garantizar el derecho fundamental a juicio por jurado pues lo provee nuestra Constitución en su Art. II, Sec. 11. Nuestro jurado no trae raíces del derecho común por lo que está libre de los "mitos" de número integrante y veredicto unánime. La doctrina de *Reid* v. *Covert,* (1957) 354 U.S. 1; 1 L.Ed.2d 1148, no puede desvincularse de los hechos que la motivaron: juicio de corte marcial seguidos a familiares de militares sirviendo fuera de los Estados Unidos (Japón e Inglaterra).

■ A la repetitiva objeción de los apelantes al veredicto por mayoría autorizado por la Constitución del Estado Libre Asociado, reiteramos nuestra posición reconociendo autonomía a Puerto Rico ·dentro de su relación política con los Estados Unidos para adoptar esa norma. Ratificamos una vez más la validez de veredictos por mayoría de 9 ó más. "Sería absurdo sostener que después de aprobada la Ley 600, la Enmienda V exige un juicio por jurado en los casos criminales que se ventilan en las cortes de Puerto Rico y también un veredicto por unanimidad. El propósito de la Ley 600 fue precisamente ampliar y no restringir los poderes y la autonomía de Puerto Rico sobre sus asuntos internos. *Cf. Figueroa* v. *People of Puerto Rico,* 232 F.2d 615 (1st Cir. 1956)"; *Fournier* v. *González,* 80 D.P.R. 262, 268-9, Saldaña, J, (1958); *Jaca Hernández* v. *Delgado,* 82 D.P.R. 402, Blanco Lugo, J. (1961); *Pueblo* v. *Hernández Soto,* 99 D.P.R. 768 (1971); *Pueblo* v. *Maldonado Dipini,* 96 D.P.R. 897, Ramírez Bages, J. (1969); *Pueblo* v. *Concepción Díaz,* 101 D.P.R. 279 (1973); *García Mercado* v. *Tribunal Superior,* 99 D.P.R. 293, 301-5 (1970), *cert. den.* 401 U.S. 1003—28 L.Ed.2d 539.

■ (2) El juez de instancia dio al jurado la siguiente instrucción sobre la fuga de los apelantes del lugar del crimen:

"Damas y caballeros del Jurado. En este caso ha habido prueba al efecto, o sea, ha habido prueba tendiente a establecer que los acusados en unión a otra persona, el testigo Torres González, huyeron del sitio de los hechos una vez los mismos ocurrieron. Debo instruirles que la huída de una persona después de la comisión de un crimen es una circunstancia que puede ser considerada por ustedes como demostrativa de una conciencia no exenta de culpabilidad, aunque os instruyo, de que por si, no es, o sea, que la huída por sí sola, no es suficiente ese solo hecho para establecer la culpabilidad de un acusado. O sea, dicha circunstancia la apreciarán ustedes y la ponderarán como tendiente en algún grado a provocar un sentimiento de culpabilidad, siendo de la incumbencia de ustedes el determinar su significado o insignificancia, así como el peso que consideradas todas las circunstancias presentes en el caso." (T.E. págs. 335–336.)

Al hacer énfasis en que la fuga no es por sí sola determinante de culpabilidad, pero que es un elemento a evaluarse en el conjunto total de la prueba, la instrucción no afectó la imparcialidad del juicio ni la presunción de inocencia. Reconocemos como válido el argumento de que un inocente, presa del pánico, puede traducir su terror a fuga; pero nos negamos a aceptar que en todo caso el autor del crimen rehuse la oportunidad de huir y escapar al arresto prefiriendo hacer guardia junto a la víctima caída exponiéndose a la vista de testigos y allí esperar la llegada del policía. *Wong Sun* v. *United States*, 371 U.S. 471, 483; 9 L.Ed. 2d 441, es fácilmente distinguible, pues allí los agentes, carentes de prueba para obtener una orden de allanamiento invocaron la huída del intervenido como *elemento único* sobre el cual descansar una inferencia de su culpabilidad, suficiente para generar la causa probable para su arresto. En el caso de autos hubo prueba de que los apelantes huyeron luego de realizado el asalto, pero no hay prueba que en forma alguna explique o justifique su huída. Es la fuga inexplicada la que debe ponderarse como indicio o detalle evidenciario de posible culpabilidad, correspondiendo al juzgador de los hechos así tomarlo o descartarlo

según resulte del proceso deliberativo en que se consideren todas las circunstancias que integran el caso sometido para decisión. *Pueblo* v. *Juarbe Albarrán*, 83 D.P.R. 747 (1961); *Pueblo* v. *Rodríguez*, 91 D.P.R. 157, Rigau, J. (1964); *cf. Pueblo* v. *Gagot Mangual*, 96 D.P.R. 625 (1968); *Pueblo* v. *Llanos Virella*, 97 D.P.R. 95 (1969).

■ (3) La realidad de que un jurado puede desechar la más persuasiva evidencia y rendir un veredicto contrario a la misma es una de las fallas de la noble institución que debemos esforzarnos por corregir, en vez de legitimar los veredictos arbitrarios y disparatados dándoles entrada a las instrucciones del juez que preside. Las instrucciones tienen como propósito ilustrar y familiarizar al jurado con las normas básicas de derecho que habrán de guiarlo en su función deliberativa. Autorizar a un jurado a incurrir en flagrante menosprecio de la prueba y de las instrucciones equivale a convertir el estrado en púlpito de anarquía. *Pueblo* v. *Landmark*, 100 D.P.R. 73, Torres Rigual, J. (1971); *United States* v. *Dellinger*, 472 F.2d 340, (1972); *United States* v. *Dougherty*, 473 F.2d 1113 (1972); *United States* v. *Boardman*, 419 F.2d 110 (1969); *Sparf* v. *United States*, 156 U.S. 51 (1895).

(4) En sus instrucciones al jurado el juez de instancia inclyó la siguiente:

"Se presume que todo testigo dice la verdad aunque esta presunción puede ser destruida o rechazada por su manera de declarar, por el carácter de su testimonio, o por su evidencia que afecte su honradez, veracidad, integridad, o sus motivos, o por evidencia contradictoria, siendo el jurado, siendo ustedes, el único juez de la credibilidad de los testigos." (T.E. pág. 338.)

■ Atacan los apelantes dicha instrucción como lesiva al debido proceso de ley e invocan la decisión de este Tribunal en *Pueblo* v. *París Medina*, 101 D.P.R. 253, Dávila, J. (1973), proscribiendo la misma. Bajo la propia regla de *París Medina* no puede prosperar el señalamiento de

error porque la instrucción no fue objetada en primera instancia y además porque el juicio de los apelantes tuvo lugar los días del 23 al 26 de marzo de 1971 y la norma de *París*(³) se aplica a juicios ventilados a partir del 1ro. de mayo de 1973. No encontramos razón fundada para impartir efecto retroactivo a esta regla, ni estamos dentro de circunstancias de excepción que clamen por la protección de un inocente. *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765, Santana Becerra, J. (1965).

■ (5 y 6) No consideramos necesario modificar la regla enunciada en *Pueblo* v. *Montalvo Acevedo*, 83 D.P.R. 727, 733, que al no considerar cómplice a un menor de 18 años, exime su testimonio de corroboración. El valor de su doctrina radica en que el adulto que induce o acepta a un menor de edad como socio de empresa en la comisión de un delito grave provee a la sociedad, con el simple testimonio no corroborado de éste, una razonable expectativa de castigo para el principal delincuente. La corroboración del testimonio del cómplice es regla decadente que ha ido perdiendo el favor del pensamiento jurídico contemporáneo. Wigmore *On Evidence*, 3ra. ed., sec. 2057, pág. 322. Y no considerando al menor de edad cómplice tampoco se justifica una instrucción de cautela al jurado que pondría el prestigio del juez en línea para desacreditar un testigo, situación que hemos repudiado en *Pueblo* v. *París Medina*, ante. En las circunstancias de este caso la instrucción

---

(³) En *París Medina*, supra, dijimos: "Pero cuando solamente han declarado los testigos de cargo, la presunción de que se está diciendo la verdad puede ser equivalente a una asunción de culpabilidad en la mente del jurado y confligir así con la presunción de inocencia de un acusado."

Recientemente en *Cupp* v. *Naughten*, Rehnquist, J., sentencia de 4 de diciembre de 1973 del Tribunal Supremo de los Estados Unidos (38 L.Ed.2d 368), un caso en que el acusado no declaró ni presentó prueba alguna en su defensa, se resolvió que la instrucción objetada por los apelantes de autos no niega la presunción de inocencia ni cambia el peso de la prueba, toda vez que no debe tomarse la misma aisladamente sino en el contexto general de las instrucciones en su totalidad, en las que se afirma explícitamente la presunción de inocencia y la obligación del Estado de probar culpabilidad más allá de toda duda razonable.

que se pide tiene el efecto último de una invasión por el juez del campo de apreciación y evaluación de la prueba reservado al jurado. La labor del abogado defensor debe en todo caso ser suficiente para destruir la credibilidad de un testigo cómplice cuando su declaración no es confiable. Existe en esta área del enjuiciamiento un justo equilibrio entre los recursos evidenciarios del Estado y el acusado que no debe alterarse.

■ (7) Además de la declaración del joven co-autor hay en el récord abundante evidencia de que los apelantes tramaron el asalto, escogieron la estación de gasolina cercana a un matorral, fueron dejados en el lugar de los hechos por un amigo a quien le pidieron transportación, fueron vistos huir del sitio por persona que luego los identificó en el Cuartel de la Policía con todas las exigencias de ley; un agente del Cuerpo de Investigación Criminal encontró el reloj del joven co-autor en el área de la estación de servicio; al testigo que lo vio herido y lo envió al hospital le dijo la víctima que "fueron tres ladrones"; y el cuchillo utilizado en el crimen fue hallado detrás del garage.

*Se modificará la sentencia apelada en el caso seguido contra Víctor Báez Cintrón por infracción del Art. 4 de la Ley de Armas reduciendo la pena a 6 meses de cárcel a tenor de la Ley Núm. 9 aprobada el 7 de julio de 1971 (34 L.P.R.A. sec. 1712), y así modificada se confirmarán ésta y las demás sentencias apeladas.*

El Juez Asociado, Señor Martín, está conforme y adicionalmente expresará un criterio concurrente respecto a la unanimidad del veredicto del jurado.